Good morning, may it please the Court. My name is Brian Cohen with the law firm of Kamerzucker Abbott here on behalf of Appellant InSync Show Productions, Inc. I'd like to reserve three minutes for rebuttal. This case involves an issue that has been settled by the U.S. Supreme Court for over 20 years. In Lytton Financial, the U.S. Supreme Court stated that a party cannot be compelled to arbitrate disputes that arise after the expiration of a collective obligation to arbitrate the issue of arbitrability itself. In fact, the Supreme Court stated whether or not a company is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court. But wasn't Lytton a situation where the contract was unequivocally terminated and there was no question about that? Frankly, Your Honor, no. In fact, what happened in Lytton was the contract expired under its normal terms, just as it would here, and in Lytton, though, the employer refused to negotiate the terms of a successor agreement. In this case, though, the parties did, in fact, begin negotiations of a successor agreement, but those negotiations resulted in impasse. The ultimate issue is whether or not the Evergreen Clause has application under the circumstances of this case. Isn't that something that's classically under the duty of the arbitrators? No, Your Honor. In fact, the Evergreen Clause only comes into play when the parties choose to do nothing. The Evergreen Clause provides that the case continues or either the terms of the contract continue from year to year until such time. Is that what the contract says? Yes. The contract says that the contract expires on December 31, 2007 and continues from year to year thereafter. But you just added something to that. You said in the event the parties don't do anything. Exactly, Your Honor. Under Section 8D of the National Labor Relations Act provides that the contract's terms generally continue from year to year or will continue until such time as a party notifies the other of its intent to modify the terms of the agreement, which is what turned out here. If that happened here, wasn't there some activity by the parties that said that we don't want to continue to be bound by the Evergreen Clause? I thought there was something in the record. But they did protest it. There didn't be any record issue whether they wished to continue on the terms of the agreement. Well, in fact, that is what occurred here, Your Honor, is that the union notified the employer that we want to modify the terms of this agreement. We do not want to continue the same terms and conditions of employment. We want a new contract. And the parties began entering into negotiations that ultimately resulted in this. So doesn't it implicate, you know, the arbitration provisions of the MORB that this should be arbitrated to resolve whether or not this contract did, in fact, continue if not wanted to terminate? No, actually, Your Honor. Under Litton, the fact that the contract began to be reopened into negotiations, the contract no longer, the arbitration provisions of the contract no longer continue. Was there an Evergreen Clause in Litton? I don't believe there was a specific clause. No, there's a recollection that the contract was done and opened and ended. That makes a big difference between that case and this case. Well, actually, Your Honor, even within the absence of an Evergreen Clause under Section 8D of the National Labor Relations Act, the contract continues even with the absence of an Evergreen Clause. Why have an Evergreen Clause, then? The Evergreen Clause is to provide a time period for when the parties could potentially reopen, to say it continues for year to year thereafter, to say we're going to continue this for another year if the parties do nothing. Let me back up here. Do we have jurisdiction here in light of the fact that a stay has been issued? Yes, Your Honor. The U.S. Supreme Court stated in Goodall Sanford that a decree under Section 301A, which is what occurred here, ordering enforcement and arbitration provision in a collective bargaining agreement, is a final decision within the meaning of 28 U.S.C. Section 1291. So it was a final order. Although there was a stay issued, under the Steelworkers Trilogy of Cases, the U.S. Supreme Court stated that arbitrator decisions in collective bargaining agreements are not to be reviewed. So if the court, even with the court issuing a stay to maintain jurisdiction It's superfluous and it's an irrelevancy because there's nothing left. There's nothing left, yeah. Is that what you're saying? That's what I'm saying exactly. What I'm saying is that if the parties are compelled to arbitration, then the company is essentially taken out of court, which is what this Court had talked about in the court, then it has to be an appealable order because otherwise they would not have the ability to. So the Supreme Court footnote has to be qualified to sort of suggest that there would be something left for the district court to resolve subject to arbitration. I mean, I assume that's how it's used. That's correct, Your Honor, that there would have to be something left to be decided outside of the arbitration. How about confirming the arbitration order or challenging the arbitration order? Well, and then under, as I said, under the Steelworkers cases, though, there wouldn't be a basis for reviewing the arbitrator's decision. The union would argue that the FAA applies, which would say that there's supposed to be some deference that's given to the arbitration order, but that seems to follow the Steelworkers cases. Now, their position is they're arguing that this is not an appealable order because the FAA says that interlocutory appeals are not appealable when it comes to petitions to a district court. So the district court judge had a mind and granted the state just something that's out there. It's really the order from the district court is not clear, other than the fact that the district court relied upon the — a case that essentially stated that arbitration — the decision of arbitrability should be left to an arbitrator. That case was decided prior to Litton, which says the exact opposite. And so the district court merely said, this seems like a complicated issue of whether or not the arbitration provision is still in effect. I'm going to defer that to an arbitrator. But — But you can't tell, in this case, whether or not the district court thought of proceeding under the FAA or not, right? That's correct. I don't know what the answer is. Well, the answer essentially is if you look at the case law that discusses the FAA's application in collective bargaining agreements, all of the cases that were cited, even in the cases cited in the 28J letter that was submitted, first of all, they all came down prior to the briefing in this. But all of those cases discuss the application of the FAA after an award has been issued where the parties are seeking enforcement of the award or seeking to vacate the award. They do not discuss the issue in the first instance of appealing the initial order compelling arbitration. So there's the — FAA is silent with regard to — or, rather, the courts have been silent with regard to how the FAA applies in that situation. And I think applying the FAA in that situation would be contrary to the U.S. Supreme Court, which has stated that with Section 301 matters, it is a final order and it is appealable. So — The standing of the footnote, that's what is issued. Correct. Now, in this case, Litton specifically states that a party that is — that a party cannot be compelled to arbitrate an issue that arose after the expiration of the agreement. Now, in this case, like in Litton, the union filed a grievance over the actions of the company that occurred after the expiration of the CVA. The court said those grievances were not the subject of the arbitration clause. Now, the union argues, as I've mentioned before, that the Litton case doesn't apply because they had an Evergreen clause. But the union's reliance on the Evergreen clause for this premise is wrong. The Evergreen clause, as I stated, only remains in effect until the party seeks to modify the terms of the agreement. Once a party timely notifies the other party of its desire to modify the — modify the terms of the agreement, the Evergreen clause does not apply. Now, outside of the construction industry contract, established labor law states that the terms of an industry contract between a union and an employer continue indefinitely unless one of four things occur. Either the employees decertify the union, either the parties reach the terms of a new agreement, the parties reach impasse, or the union essentially repudiates the collective bargaining agreement. Accordingly, the terms would remain even in the absence of an Evergreen clause, with the exception of the arbitration provision, as the court had stated in — Well, there's — there's certainly an issue with regard to the union's actions in this case. And essentially — It's not an arbitration. It's an arbitration. Quite frankly, Your Honor, no. Under Litton, the Supreme Court has said that the determination as to whether or not this contract expired and the determination of whether or not there's any matters that are subject to arbitration is a decision to be decided by the court. Well, I guess we just have to make an understanding of it, because I understand that as a question of whether the agreement expired. In fact, it's a question of history. And in response to that, Your Honor, I don't believe there is a question of the expiration of this agreement. This agreement did, in fact, expire on December 31, 2007. And what's interesting about the facts of the case is the union contended that the — suddenly there was a 2008 to 2012 agreement that supplanted the 2003 to 2007 agreement, and that that 2008 agreement, as they state in their briefs, is the identical terms and really continued the contract. That's a disingenuous statement, because the 2008 contract provided different wages, different benefits. It was essentially a new contract that the union was attempting to say, this is the contract that now applies in this case. But that is not a contract that the parties ever negotiated. The parties reached impasse, and the union essentially walked away from the table for two and a half years, in which case the union's actions by saying, we've reached impasse, the union concedes they don't dispute that impasse was reached, and they don't — they basically say, well, we're not disputing impasse, we're walking away from this. They don't show up again until two and a half years later saying, why are you not operating under the terms of this 2008 agreement? And that's essentially where the issue comes into play. Now, the union's contention that the Evergreen Clause continues the terms of this agreement indefinitely essentially would state, in contrary to all established contract and labor law, that under that Evergreen Clause, this contract is forever. That this contract remains in effect forever. And even if, as the court pointed out, even if the parties were to reopen negotiations, if the Evergreen Clause was supposedly to stay in effect, then the parties could never change the terms of this agreement. Because essentially what the union is saying is, you've reached impasse, we haven't agreed to anything, so since we couldn't agree, let's just put the 2007 contract terms back into play. And that would really fly in the face of all established labor law, because you would never be able to change the terms of the contract if you interpret an Evergreen Clause to say this contract continues forever. Do you want to save some time for rebuttal? Yes. I believe I have three minutes, and I will go ahead and save that time for rebuttal. Okay. Thank you, Your Honor. Good morning. David Rosenfeld on behalf of Local 720. I know about Lytton since I argued that case and lost it. The contract unequivocally expired. The union sought to expire the accord of withdrawn recognition. The union sought to arbitrate a grievance that arose after it expired. There was no contention that it had not expired. The case that contended a contract had not been terminated is Interstate Distributors v. Local 70, another case I argued in this Court. Which this Court held unequivocally that where there's a contract in place and a dispute arises about whether it has been terminated, the issue of termination is arbitrable. Reaffirmed in Camping and reaffirmed in the Supreme Court's case in Granite Rock recently where the Supreme Court held that the formation of a contract is not always arbitrable, implying that the termination of the contract is. And what would you do if he got Evergreen Clause? It doesn't seem to have any answer. Counsel's right. This is a very unusual, peculiar Evergreen Clause. And he's got some fair arguments that it should have terminated at some point. I don't agree with him, but those are fair arguments to make to the arbitrator. I mean, is this a typical Evergreen Clause? No. He is right. The typical Evergreen Clause says the contract expires on such and such a date and is renewed thereafter year by year unless either party serves a notice to terminate the agreement. And the National Labor Relations Board recognizes those terminations by what's called the contract bar rule that, and also by Section 8b, that says you've got to give that notice 60 days before the contract expires or 90 days. So this contract is really unusual. It has that language which doesn't terminate it, and it has the additional sentence which says the employer agrees to live by the applicable wages, terms, and conditions for additional projects in the future. I agree this is really unusual. You didn't draft that clause, did you? No. I wish I had. I didn't. But in this industry, it makes a little sense, because these are employers that come and go, and they need these stagehands. They're incredibly talented people who operate these very complicated shows, and they need them. So there's some interest in the employer having this kind of future long-term relationship subject to the right of the parties to modify it. Now, counsel just referenced the NLRA statute section. Is there something about that statute that would affect this evergreen clause? No, because this is a question of contract interpretation, which the board doesn't do. The board does say if you're going to terminate a contract, there are certain obligations to give notice to do so. Otherwise, the contract isn't terminated. But that law, which is part of its 29 U.S.C. section 158D, the notice provisions, there's no mechanism in this contract to terminate it. So if this case were to land up in an arbitrator's desk, what is the arbitrator going to do? He's going to listen to counsel's arguments and say, one, was there repudiation in the Supreme Court's rule? Did even repudiation matter for the arbitrator to decide? Or he's going to listen to counsel's argument and say, well, the union's conduct in trying to negotiate a new agreement terminated at some point. Or he's going to accept counsel's argument that a contract that never has a termination date is sort of illusory. There's some Ninth Circuit law that supports that. So it terminates at some appropriate point. Or he's going to listen to arguments and say, but they signed this agreement. They're stuck, to use the term, with a 2007 agreement. They live with the deal they caught, and we go on with life. So you go on. So then the 0407 agreement remains in effect. That's right. Now, I do want to address the jurisdictional issue. Yes, please. Because that – it's a quite important issue, at least from my point of view, and let me explain why. The Tenth Circuit two days ago decided a case holding that the FAA does apply to collective bargain agreements. I discovered it last night before the rain came. And the case is called IDW Local 111 v. Colorado Public Service. It's 214 Westlaw 6892174, Tenth Circuit, December 9th. Holding expressly that the FAA applies because it had to deal with the question of jurisdiction to hear the union's appeal from an order denying arbitration. If I had been here in 1987 when I argued the California Trucking Association case, I would have never thought that the Federal Arbitration Act applied to collective bargain agreements. The leading article that deals with collective bargain agreements is an article that David Scheller wrote called The General Theory of the Collective Bargaining Agreement. And I was his research assistant, helped him write some of the footnotes, that's all. And he never would have thought that the FAA applied, although he was very familiar with it. He wrote an article in 2000 kind of reversing his thoughts about this, saying that the FAA does apply. And so I'm here to support that view because the Supreme Court has told us in at least two cases that the FAA does apply, in Granite Rock, a footnote, and in Hyatt, in a footnote. So what's the consequence of the FAA? Well, then you look to the FAA rules about appeal. In other words, you don't look to 1291, which is the general appealability statute dealing with a final judgment, because once the FAA is implicated, then you look to Section 16 as to what is appealable. And that's why I want to be clear that you can't look to 1291, which otherwise you would. You need to look at Section 16. Even under the FAA, you still have to. You look at the provisions for appealability under the FAA, but you still have to look to determine whether it's plaintiff. Right. And that — and Your Honor's question of counsel about why did the judge stay there, I find it, frankly, bizarre. There really wasn't much reason to do it. But he did it. Well, you know, it's quite common to stay orders in FAA cases, non-labor FAA cases. One thing is arbitration, and they want to get an order enforcing it. And they're from the district court. And so, you know, they use the same case numbers. That's the reason they do it. That's what I think. I mean, no, it's very common in FAA cases. It is. And this Court has actually dealt with that recently, again, because this Court and other courts have told the district courts, you've got to watch out for this, because if you simply stay it, then you retain — then an order-compliant arbitration is not appealable. And that comes from the Supreme Court's decision in Green Tree Financial. So — But of course, you know, there could be a district judge who doesn't want an order to be appealed. Well, that's right. And that's — I don't see a lot — I'm being — I'm going to be forthright here. I don't see a lot of utility in this kind of a case in the district court staying it, but the district court did it. But there's no — but what was there to stay? He stayed the rest of the case, I assume. What was — what was the rest of the case? What would normally be the rest of the case would be if an arbitrator ruled in the union's favor, would the employer come back to the district court and say, you stated that the arbitrator was wrong and you can vacate the decision. But I thought — I thought under the section — under section 301 of the LMRA that you can't — it's final, it's binding, it's over. Nothing — there's nothing left. Under 301 and FAA jurisprudence, basically, it is final and binding, but the FAA does provide certain grounds for vacation of awards. And even under 301 jurisprudence, there are — excuse me — basis to overturn awards if they don't meet the essence of the contract. The essence test is a very broad test, but nonetheless, this Court and other courts have vacated awards finding that they don't meet the essence or they contradict some public policy. So I assume that the judge was thinking to himself, I'm staying the case, that will give the parties a chance to come back here because counsel made some valid arguments about why he shouldn't compel arbitration, and so he did it. And this Court recently addressed that problem again in Medivac v. Marabini. It's 741 Fed 3rd 4th, in which it said that if a district court compels arbitration, we're going to assume that there's a — we're going to create a rebuttable presumption that in ordering arbitration, it is staying the case unless it otherwise says. So it's trying to — the Court was trying to deal with a problem that John has pointed out of district judges who just do this either automatically or don't do it. So now the rule in this circuit is very clear. In order of staying the case and compelling arbitration is not appealable under the Federal Arbitration Act. It says — I think that's section 3 of the FAA, if I'm not mistaken. Right. That's section 16b and section 16a3. Section 16a3 references section 3, if I'm not mistaken. Section 3, section 16a3 says that an order is appealable, and it's not appealable under section 16a3. So if you go to 9 U.S.C. section 3, in any suit or — 16 — if I'm not mistaken, this provision on appealability references back to section 16a3, which says if there's a stay granted under 3, you can't appeal it. But if you read 3, it says something about staying the trial, like meaning there's something left to do in the case. It's 16a3 says that you can appeal, 16a3, you can appeal a final decision with respect to an arbitration that is subject to this title. So that's sort of the analog of 1291, that if there's a final decision, it's all done with, you can appeal any decision with respect to an arbitration. That's either compelling arbitration or confirming an order. So — hold on — in Greentree, so they lay — section 16 of the FAA, which is 9 U.S.C., the code, 9 U.S.C. section 16b says that an appeal may not be taken from an interlocutory order granting a stay, which is the point you were making earlier. Granting a stay of any action under section 3 of this title. Then you go to section 3, which says a stay may be granted in any suit — in any suit or proceeding — be brought in any courts in the United States upon any issue referable to arbitration, blah, blah, blah, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration, shall upon application of the party stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration. So it talks about a trial, which to me suggests that there's something left to do. That refers back to this old problem that Green — in Greentree talks about, about these embedded and independent cases. And an embedded case is one where — I think there are other claims besides arbitration. There's none here. And so this is an independent case, which is why, to be frank, I'm puzzled why you knew you needed to stay it, but the judge did it. And this Court has been very clear to the judge. Ginsburg. So I guess that's just it. If there is a stay, does that end the whole — we shouldn't look behind to see if there's anything else really going on? That's what section 16 of the FAA says. And Greentree say, and what this Court has said, is if the district court enters a stay, then it's not appealable. Well, but in any of those cases, talk about when it's proper to look behind you, make the judgment about it. That is issued in error, because there's nothing to state. It's like a false state. It's the shadow of your — of a pigment of your imagination. That's all it is. Well, we know it's — I mean, that much into the case? Well, I thought a lot about, anticipating Judge Breyer's question, but why would a district court stay a case like this? And it seems to me it really goes back to the view of the district court. This case may come back, and it should come back to me if it's going to come back to the district court. Well, it'll go back to her anyway. Well, but he — I understand that, but he may have been thinking that. But what — but, Your Honor, he did issue the stay. That ends the question about the appealability order, and the company didn't challenge the question. No, no, no, no, that's the question. Does it end the — does that end the inquiry? Part of the problem. Otherwise, you know, it could have been just a knee-jerk reaction, you know, that the Secretary puts into every arbitration order, right? I don't want to speculate, but I'm being very clear that I'm not unsympathetic to that comment here. In this case, he did stay it, and this Court has been very clear in light of Greentree that if there's a stay, particularly since NSYNC didn't object, they didn't file an appeal from that order granting the stay. They don't challenge it. And if I — So your position is there's no appellate jurisdiction? Exactly. And there's no — Under Greentree? Yes. And I want to be — again, to sum up here. There is no appellate jurisdiction because the Court ordered arbitration 16b2 — 16b2 says an appeal may not be taken from an interlocutory order directing arbitration. You can't appeal it. And 16a3 says you can appeal a final decision with respect to an arbitration. And Greentree and this Court have been clear that if there's a stay — Not final. Not final. End of jurisdiction under the Federal Arbitration Act. I'm — I'm a labor lawyer, and I believe in these principles, and I think if I had been involved, I would have told the judge there's no need to, but he did it. It ends the jurisdiction. Well, I could think of a circumstance where the union could say, okay, NSYNC, let's go to arbitration. NSYNC says, no, we're not going to, and we could go back and say, well, judge, try the case as a straight 301, reach a contract case, because there is law that if an employer repudiates an arbitration clause, you can try it. But it's — it's there. It is the rule that there is a stay, wasn't challenged, the order compelling arbitration not appealable. That's correct. Well, we raised in our — in our initial brief, and it's — I know my time is up, but the Federal Arbitration Act jurisprudence now becomes really important in 301 jurisdiction because there are some procedural and other substantive differences. And although the Supreme Court has twice now said the Federal Arbitration Act is applicable in footnotes, the Supreme Court has never addressed the question of whether there's a conflict. There's one thing, just let me ask you on a policy, when you read that Supreme Court decision as a good-all, good-all, I mean, you know, it talks about, you know, the policy of resolving disputes under collective bargaining agreements, pursuant to the terms of collective bargaining agreements, enforcing the policies behind collective bargaining agreements. And it seems like if you begin to overlay the FAA on top of that, you might contradict those principles. To the contrary, if I may take a minute to explain why, let's go back to 1973 when David Feller's article was — was published, and I graduated from law school the next year. The real jurisprudence about arbitration was under 301. And I think as we all know, in the 70s, in light of several Supreme Court cases, Shearson and all these others, the Supreme Court now says that the Federal Arbitration Act becomes far more important. So this whole field of law has now changed where the Federal Arbitration Act has engulfed arbitration and now has been infused into 301 law. And my view is that, in fact, the FAA is in many respects — I'm sorry, overstatement — in some respects more favorable to arbitration. So I'm happy to see the FAA become part of the jurisprudence of collective bargaining. For example, I think that the Court has less power to overturn an award under the Federal Arbitration Act than it does under 301 jurisprudence. And this procedural case illustrates that there's another argument, which is that counsel's arguments, if I may just restate them and explain why the FAA is better, he's saying, well, this is unlawful under the National Labor Relations Act. The National Labor Relations Act says you can't do this. And I'm not saying he's making a foolish argument, but that's his argument. But under the FAA, questions of the legality of the contract would clearly be resolved by the arbitrator. But counsel points out that there are some board doctrines that say the arbitrator can't resolve them. So I like the FAA because it says the arbitrator gets to resolve those where perhaps under traditional 301 law, the board would not do that. So as a matter of policy, I am advocating that the FAA is applicable to collective bargaining agreements. And again, there's an anomaly or exception which the Tenth Circuit deals with, which makes us all kind of anomalous, and that is that collective bargaining agreements that govern workers in interstate transportation, meaning truck drivers, are not governed by the FAA. So everybody else is. It doesn't say stay. It says you can't – that's 16b3. It says, except as otherwise provided in 1292, an appeal may not be taken from an interlocutory order granting a stay of any action under Title Section 3. I don't believe that's the question here because he really didn't stay the trial. What he did was stay the action instead of entering a judgment of dismissal. Under the Medevas case, a court can enter a judgment of dismissal that is with prejudice or without prejudice. In either case, it's final and the order is appealable. But if it doesn't enter a judgment of dismissal with prejudice or without prejudice, it's not final under Medevas. But here's the question. These are my favorite cases. I do. I'll be honest about it. I've been – there are at least five cases in the briefs that are cases I've argued in this Court. So I've been doing this now as long as David Feller did. But, you know, I've been doing this. And I think the FAA should apply. I think it makes sense. I agree with it. Well, to be honest, I have a – I also teach in – I've been teaching at Berkeley and I have a student who's writing an article on this very point. So thank you. All right. Thank you. Thank you, Mr. Russell. Thank you, Your Honor. Just to address a few points. The first with regard to the application of the FAA. The citations to the Supreme Court cases, as we've talked about, are in a footnote that merely say we'll assume the FAA applies in these particular cases. And as I stated before, they're only applying in situations where they're looking to enforce an arbitration award. They do not apply in the situation where it's going to be appealing the initial order. Now, as the Court has stated and requested a question as far as does the stay end the inquiry. In fact, in this case, the stay is essentially meaningless. As you pointed out, the case is over as far as what else the Court has to do. Well, it could come back to enter a judgment enforcing the arbitration. And it would be – Or allowing the losing side to challenge the arbitration. And potentially it would come back for that purpose, but under the Steelworkers Trilogy and the case law that interprets the collective bargaining agreements and stating that arbitration awards are to be given deference and are to be – are actually not to be reviewed by the district courts. They are final and binding. So the arbitration is essentially – The question is whether it should come back one way or the other, whether it's a stay or not. Correct. So I believe the Court's entering of the stay is – I'm not sure – I can't get into the judge's mindset to figure out why she determined that a stay was necessary, but essentially it really doesn't impact the fact that her decision was final and that it forced the parties to arbitration. And notably, the courts have stated that a party should not be compelled to arbitrate issues for which it has not agreed to arbitrate. And that is the issue here that is saying if we send it to an arbitrator, an arbitrator will essentially have to decide, well, did the contract expire, and then ultimately or not the issues that the union is claiming were violated, the contract were, in fact, violated. I was sending it back to the district court and asking the district court judge what you meant by that. Well, the district court should actually take it back and decide whether or not the case expired is what is – is rather the contract expired, as is what's implied by Litton. The fact is – and we talked about the Evergreen Clause to some extent – was we discussed the fact that the Evergreen Clause was unusual in this case because it didn't include those additional words that said unless the parties reopen it. But the intent of the parties was clear. The union sent a letter saying this contract is about to expire, we want to reopen negotiations, which means even though the Evergreen Clause didn't contain those words, the parties clearly intended it to because the union sent the letter saying let's reopen negotiations. So if the intent was to do that, then the intent was the contract expires at that time unless the parties do nothing, in which case it would continue from year to year thereafter. Okay. So with that said, we would – we simply would ask the Court to remand this back to the district court for a dismissal of arbitration. Thank you, counsel. Thank you, Your Honors. Thank you. Thank you. Thank you, counsel. We appreciate your argument. It's an interesting case. Thank you.
judges: Block, Tashima, Paez